UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY MCKERLEY, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:07-CV-0741-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.  Introduction.

Shirley McKerley ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. McKerley timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. McKerley was fifty-seven years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has a high school

education.  Tr. at 14.  Her past work experience includes employment as a licensed practical nurse.  *Id*.  Ms. McKerley claims that she became disabled on June 30, 2001, due to asthma, arthritis, and high blood pressure.  *Id*.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms.

McKerley meets the nondisability requirements for a period of disability and DIB and was insured through June 30, 2001. Tr. at 20. He further determined that Ms. McKerley has not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* According to the ALJ, Plaintiff's edema in the extremities, hypertension, arthritis/arthralgia, and asthma are considered "severe" based on the requirements set forth in the regulations. *Id.* However, the ALJ determined that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id.* The ALJ did not find Ms. McKerley's allegations to be totally credible and determined that she has the residual functional capacity to perform at least light work activity. *Id.*

According to the ALJ, Ms. McKerley's past relevant work as a licensed practical nurse does not require the performance of work related activities precluded by her RFC. *Id.* Therefore, the ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date she was last insured." *Id.*

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's

decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Ms. McKerley alleges that the ALJ's decision should be reversed and remanded for three reasons. First, Ms. McKerley argues that the ALJ failed to properly apply the Eleventh Circuit's three-part pain standard. (Doc. 6 at 4.) Second, Plaintiff contends that the ALJ did not afford proper weight to her treating physician's opinion. *Id.* at 8. Finally, Ms. McKerley claims that the ALJ's assessed RFC is "baseless" without the opinion of Plaintiff's treating physician. *Id.* at 10.

A. Three-Part Pain Standard.

Plaintiff asserts that the ALJ's evaluation of her subjective complaints

of pain was improper. Specifically, Ms. McKerley alleges that "she meets [the Eleventh Circuit's] three-part pain standard." (Doc. 6 at 5.) Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest

of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

In this case, the ALJ found that Ms. McKerley met the first prong of the Eleventh Circuit's pain standard, but he did not believe that the evidence confirmed the severity of the alleged pain arising from that condition or that any medical condition of such severity could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. Tr. at 18. The ALJ specifically discussed Plaintiff's allegation that she has suffered from asthma for most of her life. *Id*. at 18. In reviewing Plaintiff's asthma, the ALJ noted that she was hospitalized in September 1998, with asthmatic bronchitis. *Id*. However, following her hospitalization, Plaintiff did not seek

additional treatment for asthma until she saw Dr. Keith in April 1999. *Id*. At that time, Plaintiff was given a Z-pak and Medrol Dosepak and Dr. Keith noted that he expected Plaintiff to do well. *Id*. X-rays performed in December 2001, revealed that Plaintiff's lungs were clear. *Id*. By her own admission, Plaintiff currently does not use inhalers or breathing machines and she only has flare-ups in the spring when there is "a lot of pollen in the air." *Id*.

The ALJ also addressed Plaintiff's credibility related to her hypertension. *Id*. at 18. While Plaintiff alleges having hypertension prior to June 30, 2001, the ALJ noted some relatively low readings from that time period. *Id*. According to Dr. Keith's records, Plaintiff's condition had been "fairly well controlled." *Id*. at 18, 108, 119, 120. Also, at the hearing, Plaintiff's attorney admitted that Plaintiff's blood pressure was under control during the period at issue. *Id*. at 202-03.

Finally, The ALJ also discussed Plaintiff's complaints related to her arthritis and arthralgias. *Id*. at 19. At the hearing, Plaintiff testified to having significant, constant pain, which increased with sitting, standing, and walking. *Id*. at 210. She also alleged that her left hip hurts and she has

muscle spasms in her thighs if she tries to stand for any length of time. *Id*. Plaintiff also claims that her feet and knees hurt and swell, which prevent her from standing for long periods of time. *Id*. at 212. She stated that some days she cannot do anything more than sit in a recliner. *Id*.

While the ALJ recognized that x-rays taken in October 2002 revealed almost complete loss of the L5-S1 interspace and osteoarthritis in Plaintiff's left hip, he determined that there was no objective clinical evidence during the relevant period to support the severity of Plaintiff's alleged pain.[1] *Id*. at 19. In April 2001, Dr. Keith reported Plaintiff's biggest complaints were related to her arthritic and arthralgias in her feet, hips, neck and back. *Id*. at 120. However, Dr. Keith's examination revealed only some edema and some degenerative changes, but no other problems were noted. *Id*. at 120. In May 2001, Plaintiff came in for follow-up on her laboratory tests and Dr. Keith noted that they "looked good," mentioning no symptoms from her arthritis or arthrialgia. *Id*. at 119. Similarly, in June 2001, Plaintiff came in for a follow-up and Dr. Keith stated "she has done pretty well." *Id*. In

---

[1] It is undisputed that the October 2002 x-rays, which revealed almost complete loss of the L5-S1 interspace, were taken after the relevant period at issue.

December 2001, six months after Plaintiff's insured status expired, Dr. Keith stated "[t]he overall assessment is that she is doing well." *Id.* at 108.

Plaintiff also testified she did not take pain medication prior to June 30, 2001, because she was "not one to take pain medication," as even the mildest forms "put her to sleep." *Id.* at 222. However, the ALJ noted that despite not taking pain medication, she was able to perform activities such as taking in and caring for three grandchildren (amongst them a 19 month old baby) during the period at issue. *Id.* at 120, 217-18.

In this case, the ALJ specifically considered Plaintiff's allegations of pain. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's subjective allegations of pain did not cause her to be disabled.

B.  Treating Physician Diagnosis.

Plaintiff also contends that the ALJ improperly evaluated her treating physician's opinion. (Doc. 6 at 8.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th

Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . .

"but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

In this case, Plaintiff disputes the ALJ's finding that Dr. Keith's assessment of her physical capabilities "lacks clinical support." (Doc. 6 at 8.) On October 9, 2003, Dr. Keith completed a physical functional assessment, which indicated that as of June 30, 2001, Plaintiff could not work a full eight-our day and that she would have to lie down during the day. Tr. at 141. He indicated that Plaintiff's symptoms and limitations were caused by arthritis of the back, hips, and knees; asthma; hypertension; and heart disease. *Id.* Dr. Keith found that these impairments were present

before June 30, 2001 and have not improved since that time. *Id*. at 142.

In rejecting this opinion, the ALJ stated that Dr. Keith's physical assessment "is contradicted by his own clinical evaluations made prior to and, since June 30, 2001." *Id*. at 19. The ALJ provided a detailed summary of the medical records from Dr. Keith, as discussed above, which indicated Plaintiff had done well and that her impairments were controlled by medication. *Id*. at 16-17, 19. Moreover, the ALJ noted that the October 2003 assessment was more than two years after Plaintiff's date last inured, and he had only seen Plaintiff on a few occasions since that time. *Id*.

Based on the above reasons, substantial evidence supports the ALJ's decision to reject Dr. Keith's October 2003 physical capabilities assessment.

C.   RFC Assessment.

Plaintiff also argues that the ALJ's findings that Plaintiff retains the RFC to perform the exertional demands of light work are not supported by substantial evidence. (Doc. 6 at 10.) Specifically, Plaintiff asserts that "without the opinion of Dr. Keith, there is absolutely nothing in the record for the ALJ to base his conclusions as to Plaintiff's [RFC] other than non-examining state agency physicians." *Id*.

An RFC is defined as "the most you can still do despite your limitations," and the Agency will assess RFC based on "all the relevant evidence in your case record."  20 C.F.R. § 404.1545(a).  The Grid Guidelines define light "work as work which involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." 20 C.F.R. § 404.1567(b).  Even though the weight lifted may be very little, a job is in the light category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  *Id.*

In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").  The regulations also establish that the claimant's burden is to provide the relevant medical and other evidence she believes will prove her alleged

disability. *See* 20 C.F.R. §§ 404.1512(a) and (c). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

In determining that the Plaintiff retains the RFC to perform light work activity, the ALJ explained that he carefully considered Plaintiff's subjective allegations of pain as well as the medical evidence and medical opinions contained in the record.[2] Tr. at 15-20. In fact, contrary to Plaintiff's argument, the ALJ specifically noted many of Dr. Keith's treatment notes and opinions in reaching this conclusion. *Id*. at 19. However, the ALJ determined that Dr. Keith's physical assessment from October 2003 was inconsistent with his own clinical evaluations made prior to and since June 30, 2001. *Id*. This appears to be the only opinion from Dr. Keith that received little weight from the ALJ. Based on the remaining evidence in the medical record, the ALJ concluded Plaintiff's condition is not of the severity that it could reasonably be expected to give rise to continuous disabling pain

---

[2]The objective medical evidence as well as Plaintiff's subjective allegations of pain were discussed in the previous section.

or a disabling medical condition.  As discussed above, this Court finds that the reasons the ALJ articulated for rejecting Dr. Keith's October 2003 assessment were explicit and adequate.  Therefore, substantial evidence supports the ALJ's determination that the Plaintiff can perform light work activity.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. McKerley's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 29th day of July 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671